**In the Matter of WILLIAM J. BRITTINGHAM, INC., d/b/a Copper Kettle Restaurant, Debtor.**

**Richard G. ELLIOTT, Jr., Trustee, Plaintiff,**

**v.**

**George P. LEOUNES, Nicholas P. Leounes and Thomas P. Leounes, Defendants.**

**Bankruptcy No. 82–169.
Adv. No. 82–46.**

United States Bankruptcy Court, D. Delaware.

May 14, 1984.

Richard G. Elliott, Jr., Wilmington, Del., for trustee.

Dennis M. McBride, Wilmington, Del., for defendants.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

Debtor operated the Copper Kettle Restaurant under a lease with George P., Nicholas P. and Thomas P. Leounes. The lease dated August 8, 1978, covered real estate, building, equipment, antiques and trade name for a ten-year term with an option to purchase at the end of the term for $150,000. In addition to a $3,500 monthly rental, debtor was to pay all taxes, utilities, insurance premiums and keep the building and contents in repair. The lease called for a $50,000 security deposit which the Leounes could treat as their own without any accountability to the debtor during the term of the lease. It further provided that in the event of a breach of any covenant, the $50,000 could be forfeited in addition to any other available remedies. If the debtor exercised its option to purchase, the $50,000, or any portion not forfeited or set-off for repairs or replacements, would be applied toward the purchase price of the property.

In November 1981 the debtor closed the restaurant. On March 8, the Leounes notified debtor its lease was terminated for failure to maintain insurance, noting that property taxes and water rents were delinquent. The Leounes then filed a summary proceeding for possession. Despite actual notice of the bankruptcy filing on April 28, the Leounes on April 29 continued their proceeding in the Justice of the Peace Court and were awarded possession.

On May 21, the day after he was appointed trustee, Richard G. Elliott, Jr., filed this action against the Leounes requesting that they be enjoined from further violation of the automatic stay, show cause why they should not be held in contempt and turn over to him possession of the restaurant and the $50,000 security deposit.

The trustee gained possession of the premises on May 25. The next day, the Leounes filed a complaint seeking relief from the stay. The trustee's request for an extension of time from June 28 to July 28 within which to exercise his right to assume or reject the lease was granted. The contempt proceeding and the request for stay relief were combined for hearing on July 14. The Leounes were found to be in contempt, sanctions were imposed and relief from stay was denied.

The trustee having been unsuccessful in marketing the estate's leasehold interest notified the Leounes by letter of July 27 that he was abandoning the interest and they could treat the property, with the exception of the $50,000 security deposit, as their own. On August 4 they contracted with Stoltz Realty to represent them. On August 6 they entered into a contract to sell the restaurant for $375,000 (Plaintiff's

Exhibit #4). Settlement took place November 11.

In response to the trustee's inquiry of July 27 as to their claimed offsets against the security deposit, Leounes sent him a statement listing 17 items totaling $67,265.38 (Plaintiff's Exhibit #1). After a period of unsuccessful settlement negotiations, the turnover aspect of the trustee's complaint was set for trial. The issue litigated was not whether the trustee was entitled to the security deposit but the amount of the Leounes' allowable claim and their right to a set-off. 11 U.S.C. §§ 502(b)(7), 506, 553.

Leounes contend they are entitled to all of the $50,000 because their damages total at least $54,533.87 which is less than the maximum claim that could be allowed under the § 502(b)(7) formula. The components of their claim are: $25,367.21 out-of-pocket expenses and damages; $29,166.66 past due rent and rent accrued during trustee's occupancy.

■ In looking at the Leounes' claim for out-of-pocket expenses and damages, we will use Leounes' original demand as a point of reference (Plaintiff's Exhibit #1 listing 17 items). At trial, Thomas Leounes waived any claim for lock changes, missing and damaged property, and his personal expenses in supervising the clean up of the restaurant (Items 7, 8, 9, 15, 16 and 17) and stated that the amounts claimed for coolant and exterminating (Items 11 and 12) were not expended. The amount claimed for cleaning and trash removal, painting and plastering repair, roof repair and plumbing repairs of $5,876.34 (Items 5, 6, 13 and 14) was not disputed by the trustee and are the kind of charges for which a security deposit is intended. This sum may be set-off from the $50,000 security deposit.

■ The Leounes' claim for rental must be split into a claim for pre-petition rental and one for post-petition rental. The Leounes are entitled to and may set-off $21,591.77 from the security deposit for pre-petition rental. This amount includes two month's rental, $7,000 (Item 1), property taxes of $9,746.28 (Item 2), water rents of $4,232.13 (Item 3) and $612.86 for insurance premiums (Item 4) owing at the time of the filing of debtor's petition. Payment of property taxes, water rents and insurance premiums were debtor's responsibility under the lease and are considered as unpaid rent. 11 U.S.C. § 502(b)(7)(B); 25 Del.C. § 5114(d); *In re Zienel Furniture Company, Inc.,* 13 B.R. 264 (Bkrtcy.W.D. Wis.1981); *Matter of Florida Airlines, Inc.,* 17 B.R. 683 (Bkrtcy.N.D.Fla.1982).

■ The Leounes are entitled to an administrative claim for the value of the use and occupancy of the premises during the period the trustee was considering whether to assume or reject the lease, that is, from May 25 through the end of July. The trustee's letter of July 27 to Leounes' attorney informing him that the Leounes could now treat the property as their own was a rejection of the lease (Plaintiff's Exhibit #2). That rejection related back to the time immediately preceding the filing of the petition and has the same effect as an abandonment—once abandoned an asset cannot be brought back into the estate. Thus, the notice of abandonment referred to in the letter and filed with the court was an unnecessary and meaningless act. The Leounes were entitled to and in fact were in possession of the premises the beginning of August.

■ The Leounes assert that they are entitled to post-petition rental in accordance with the terms of the lease. The trustee contends that $1,500 of the monthly rental was allocated toward the purchase price and that the value of use and occupancy is $2,000 per month. This contention is not supported by the terms of the lease nor was there any evidence of other real estate rentals for comparable properties. A real estate broker testified that in his opinion the rental was high in light of the fact it was a net lease and the debtor's principal testified that the restaurant could have been operated profitably at a rental of $2,000. This testimony is insufficient to overcome the presumption that the amount of rent set out in the lease is the reason-

able value for use and occupancy. *In re Good Hope Industries, Inc.*, 16 B.R. 702 (Bkrtcy.Mass.1982).

■ The Leounes may file an administrative claim for the value of the trustee's use and occupancy of the premises for the period May 25 through July in accordance with the terms of the lease. It is a post-petition debt and as such may not be set-off under § 553 against a security deposit. *In re Kors, Inc.*, 22 B.R. 19 (Bkrtcy.Vt.1982).