**In re John B. LANSBERRY, d/b/a Lansberry Coal and Excavating Company, Debtor.**

**In re VIDEO MINERS, INC., Debtor.**

**MINI–MINERS, INC., Robert Reardon, and Robert Kelly, Plaintiffs,**

**v.**

**John B. LANSBERRY, d/b/a Lansberry Coal and Excavating Company; and Video Miners, Inc., Defendants.**

**Bankruptcy Nos. 94–20084–BM, 94–20083–BM.**

**Adv. No. 94–2316–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 19, 1995.

Joseph M. Colavecchi, Colavecchi & Ryan, Clearfield, PA, for debtors/defendants.

John E. Westerman, Bonnie L. Pollack, Meltzer, Lippe, Goldstein, Wolf, Schlissel & Sazer, P.C., Mineola, NY, Natalie Chetlin Moritz, Todd & Silverberg, P.C., Pittsburgh, PA, for plaintiffs.

Carl P. Izzo, Chapter 7 Trustee, Greensburg, PA.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Several matters are before the court.

Plaintiffs Mini–Miners, Inc., Robert Reardon, and Robert Kelly have moved to dismiss debtors' counterclaim against them and to voluntarily dismiss their own complaint objecting to the dischargeability of certain debts. In support of their motion, plaintiffs argue that the counterclaim must be dismissed because the right to pursue said cause of action was sold to them by the chapter 7 trustee at a sale conducted in this court. Alternatively, they argue that as a final order was entered settling the matter, further prosecution of their complaint would be a contravention of that court order.

Debtors do not oppose the request for voluntary dismissal of the original adversary objecting to dischargeability. They do, however, oppose plaintiffs' request for involuntary dismissal of their counterclaim. Debtors deny that the counterclaim was sold and insist that the chapter 7 trustee "effectively abandoned" it. In addition, debtors have brought a motion of their own seeking to compel discovery from plaintiff Robert Reardon.

Plaintiffs' motion shall be granted. Their complaint will be voluntarily dismissed while debtors' counterclaim will be involuntarily dismissed. Debtors' motion to compel discovery shall not be addressed in light of this resolution of plaintiffs' motion.

–I–

### FACTS

Video Miners, Inc., and John Lansberry, doing business as Lansberry Coal and Excavating Company, filed voluntary chapter 11 petitions at Bankruptcy No. 94–20083–BM and No. 94–20084–BM, respectively, on January 12, 1994. Video Miners was in the business of developing and utilizing video coal mining machinery. Lansberry was the sole shareholder of Video Miners.

Assets valued at $2,882,566.52 and total liabilities of $1,503,940.80 were listed in the schedules appended to the petition of Video Miners. Among the assets listed on Schedule B, Personal Property, was a one-third interest in a partnership known as KL & R Mining Company. The remaining two-thirds interest in KL & R was owned by Mini–Miners, a partnership consisting of Robert Reardon and Robert Kelly. An account receivable owed to debtor by KL & R with a declared value of $1,773,422.97 also was listed on Schedule B. Of the debts listed on Video Miner's schedules, the sum of $660,428.42 was owed to secured creditors while the remaining $843,511.90 was owed to general unsecured creditors.

Assets valued at $479,393,73 and total liabilities of $1,224,447.70 were listed on the schedules appended to Lansberry's petition. Among the assets listed on Schedule B was Lansberry's interest in Video Miners with a declared value of $150,000.00. The account receivable owed by KL & R that was listed on Video Miners' schedules was not listed on Lansberry's schedules. Of the debts listed on Lansberry's schedules, $279,909.70 was owed to secured creditors while the remaining $945,438.00 was owed to general unsecured creditors.

Neither Video Miners' nor Lansberry's schedules listed any potential cause(s) of action against KL & R, Mini–Miners, Reardon, or Kelly.

Notwithstanding this omission, Video Miners and Lansberry brought a lawsuit against KL & R at Adversary No. 94–2104–BM on March 1, 1994. The partnership agreement establishing KL & R, debtors alleged, required Mini–Miners, Reardon, and Kelly to guarantee up to $1,000,000.00 in financing for the development of the video coal mining machinery. According to debtors, KL & R

breached the agreement by refusing (or failing) to provide such guarantees. As a consequence of the breach, Video Miners and Lansberry allegedly had to provide their own guarantees and had to obtain advances from a third party to commence mining operations.

Debtors claim they expended or became responsible for the sum of $1,773,422.97 as a result of the failure of Mini–Miners, Reardon, and Kelly to comply with the provisions of the partnership agreement. In their prayer for relief, debtors seek an order dissolving the partnership and transferring ownership to them of a sublicense and certain mining machinery. They also request a determination that no further obligation is owed to Mini–Miners.

On April 29, 1994, Mini–Miners, the other partner in KL & R, formally moved to dismiss Adversary No. 94–2104–BM for lack of subject-matter jurisdiction. Among other things, Mini–Miners claimed that KL & R had acquired all of the property of the partnership and claimed that the dispute in the adversary proceeding did not involve property of either bankruptcy estate.

Also on April 29, 1994, Video Miners and Lansberry moved to convert their chapter 11 cases to chapter 7 proceedings because they were unable to propose workable plans of reorganization. Both cases were converted to chapter 7 proceedings at that time. The same chapter 7 trustee was appointed in both cases shortly thereafter.

The chapter 7 trustee subsequently consented to dismissal of Adversary No. 94–2104–BM without prejudice to his right to bring a similar adversary action, if appropriate, on behalf of debtors' estates. An order dismissing the adversary action without prejudice was entered over debtors' objections on May 31, 1994. The order provides as follows:

> AND NOW, this 31st day of May, 1994, in consideration of the Motion and the Trustee's Response thereto, the Adversary Action at No. 94–2104–BM is hereby DISMISSED, without prejudice to the Trustee's right to institute an Adversary Action on behalf of the Estate, based on the same or different issues, against either Mini–Miners, Inc., or KL & R Partnership, if

the same is deemed by him to be appropriate.

On August 16, 1994, the chapter 7 trustee submitted a motion in both cases for joint sale of estate property. He proposed selling all of debtor's interest (if any) in certain property as well as any property in which both estates claimed an interest. The motion contained the following provision:

> The property being sold is the Estate's interest in Property of Debtor, Video Miners, Inc. . ., including vehicles, machinery, equipment and other personal property, both tangible and intangible. . . .

The motion also contained virtually identical provisions for property in which the estate of debtor Lansberry claimed an interest and for property in which both estates claimed a joint interest. Property in which the estates of Video Miners and Lansberry claimed interests was listed in attachments to the motion identified as Exhibit A and Exhibit B, respectively. Property in which both estates claimed a joint interest was listed in an attachment identified as Exhibit C.

The attachments specifically identified assets that debtors had listed on their bankruptcy schedules. No causes of action were listed on the attachments as none had been listed on debtors' schedules. The motion further stated that the property was to be sold "as is, where is" and was subject to any liens, encumbrances, or competing ownership claims or interests of others.

Notice of the sale published in newspapers of general circulation specified the time and place of the public sale and that the sale was "as is, where is" and was subject to completing liens, encumbrances, and interests. In addition, it contained the following provisions:

> **PROPERTY FOR SALE.** Vehicles, machinery, equipment and other personal property, both tangible and intangible. . . . Lists of said property are set forth in the original Motion filed with the Court. . . .
>
> Terms announced at sale will supersede the terms of any prior notice. More information is available from the [trustee] as is property list. . . .

Several parties-in-interest responded to and/or objected to the proposed sale, including KL & R and debtors.

KL & R claimed that it already owned the assets by virtue of the partnership agreement and asserted that it had offered to pay the sum of $20,000.00 to settle any disputes with the estate including ownership of the assets. KL & R further stated that it had not offered to purchase the assets as it believed it already owned them. It was offering the sum of $20,000.00 "to buy peace" with the trustee. KL & R requested that the trustee's motion be supplemented to indicate that KL & R had offered the sum of $20,-000.00 to settle and compromise any ownership issues; and should be supplemented to indicated that the offer would not be subject to higher or better offers because the trustee did not own the assets in question. The court acknowledged that this might be an offer to settle but declined to deny the estate the right to seek higher or better offers. In fact, that opportunity was given and utilized.

Video Miners and Lansberry also objected to the trustee's motion to sell. They claimed that many of the items the trustee proposed selling were worth more than $20,000.00 and that many of them were unencumbered. In particular, they claimed that the lawsuit against KL & R had a value of $1,773,422.97.

A hearing was held on October 13, 1994, on the trustee's motion for joint sale of property.

The trustee stated at the hearing that his proposal was "primarily a sale" but, to some extent, also was a settlement of a dispute with KL & R as to the ownership of certain partnership assets. According to the trustee, KL & R was willing to purchase any interest in the disputed assets that he believed he had for the sum of $20,000.00.

In response to queries from the court, the trustee further stated that, even though he had not specifically listed them among the assets to be sold, the proposed sale included any causes of action belonging to debtors' estates against KL & R, Mini–Miners, Reardon, and Kelly. He also represented that he had consented to the dismissal of the previous adversary action at No. 94–2104–BM be-

cause he did not think the lawsuit had much merit and because it would have been too costly to pursue it and might not have yielded anything for the estates even if it had been successful.

Mini–Miners took the position that KL & R believed that it owned the assets in question by virtue of the partnership agreement between Video Miners and Mini–Miners, and therefore was "buying what it already owned".

At the end of the hearing, after no other party had made a bid, the court determined that what the trustee had proposed was a "hybrid"—i.e., a settlement as well as a sale of the assets. It further determined that all of the requirements for a settlement and for a sale had been satisfied and entered an order containing the following language:

> It is **ORDERED, ADJUDGED** and **DE-CREED** that the sale of the interest of each Estate in and to the personal property listed in Exhibits "A", "B", and "C" attached thereto and made a part hereof, be and hereby is confirmed to KL & R for the sum of $20,000.00, **AS IS, WHERE IS,** and **SUBJECT TO ALL LIENS, EN-CUMBRANCES AND COMPETING OWNERSHIP INTERESTS.**

No appeal of the above order was filed by any party-in-interest.

Previously, or more specifically on August 19, 1994, Mini–Miners, Reardon, and Kelly brought an adversary action against Video Miners and Lansberry at Adversary No. 94–2316–BM objecting, pursuant to 11 U.S.C. § 523(a), to the dischargeability of certain debts.

In addition to denying in their answer many of the allegations of the complaint, debtors asserted a counterclaim that, with only minor exceptions, is identical to the cause of action they had asserted against KL & R Mining Company in their earlier adversary action. The counterclaim differed only in that it was asserted against Mini–Miners, Reardon, and Kelly instead of KL & R and sought a monetary judgment in the amount of $1,773,422.97 instead of a declaration dissolving the partnership and transferring certain partnership assets to them. The under-

lying predicate acts and legal theory were the same as in the previous adversary action.

On December 1, 1994, Mini–Miners, Reardon, and Kelly moved to dismiss the counterclaim against them and to withdraw their own complaint at Adversary No. 94–2316–BM. The counterclaim should be dismissed, they argued, because KL & R had purchased the cause of action from debtors' estates at the sale conducted in this court on October 13, 1994. They further argued that there was no reason for the adversary action to continue in light of the order of October 13, 1994, and that judicial economy and the convenience of the parties would be served if the complaint were withdrawn.

In their response to the motion of Mini–Miners, debtors do not object to the request to withdraw the complaint. Debtors do, however, object to the request to dismiss their counterclaim. According to debtors, KL & R did not purchase the cause of action asserted in the counterclaim. They further maintain that when the trustee consented to dismissal without prejudice of the cause of action asserted in the complaint at Adversary No. 94–2104–BM, he "in effect abandoned it" and insist that they themselves therefore may re-litigate it.

On December 2, 1994, debtors moved to compel discovery on their counterclaim. They sought an order directing Robert Reardon to appear for deposition.

A hearing was held on December 29, 1994, on the motion of Mini–Miners, Reardon, and Kelly to dismiss debtors' counterclaim and to withdraw their own complaint and on debtors' motion to compel discovery.

–II–

**DISCUSSION**

**A. Debtors' Counterclaim**

Debtors have raised several objections to the motion of Mini–Miners, Reardon, and Kelly to dismiss debtors' counterclaim. They first contend that the cause of action asserted in their counterclaim was not sold to KL & R because the cause of action was not listed among the assets the trustee proposed selling. Also, they contend that the trustee

"abandoned" the cause of action when he consented to dismissal of their complaint at Adversary No. 94–2104–BM and that they therefore may bring such an action on their own.

An "estate" was created when each debtor filed a chapter 11 petition. *See* 11 U.S.C. § 541. Included therein are "all legal or equitable interests of the debtor in property as of the commencement of the case". 11 U.S.C. § 541(a)(1).

■ It is undisputed that the cause of action asserted in the counterclaim arose or accrued prior to the filing of the chapter 11 petitions on January 14, 1994.

There is a split among courts of appeals on the method for determining whether a particular pre-petition cause of action becomes property of the estate.

The majority have held that all pre-petition causes of action become estate property without regard to state law. *See Matter of Geise,* 992 F.2d 651, 655 (7th Cir.1993); *Cottrell v. Schilling,* 876 F.2d 540, 542–43 (6th Cir.1989); *Sierra Switchboard Co. v. Westinghouse Electric Co.,* 789 F.2d 705, 709 (9th Cir.1986); *Tignor v. Parkinson,* 729 F.2d 977, 980 (4th Cir.1984).

The United States Court of Appeals for the Second Circuit has rejected the *per se* rule adopted by the majority and has held that state law must be consulted. In particular, one must determine whether a given cause of action is transferable under state law or is subject to the reach of creditors by judicial process. *See In re Crysen/Montenay Energy Co. v. Esselen Assocs., Inc.,* 902 F.2d 1098, 1101 (2d Cir.1990) (*citing In re Howard's Appliance Corp.,* 874 F.2d 88, 93 (2d Cir.1989)).

The United States Court of Appeals for the Third Circuit has not decided whether to adopt the majority view or that of the minority in determining whether a given pre-petition cause of action becomes estate property upon the filing of a bankruptcy petition.

We fortunately need not resolve this issue here. The cause of action asserted in the counterclaim became estate property under either view.

Even under the minority view, we would have to conclude that the cause of action became property of debtors' estates upon the filing of the chapter 11 petitions. The counterclaim, like the complaint at Adversary No. 92–2104–BM, sounds in contract. Debtors aver that Mini–Miners, Reardon, and Kelly breached certain provisions of the agreement creating KL & R and that debtors have suffered a monetary injury as a consequence. Causes of action for breach of contract and for fraud are transferable under Pennsylvania law. *See Lambert v. Fuller Co., Inc.,* 122 B.R. 243, 246 (E.D.Pa.1990) (*citing Hedlund Mfg. Co. v. Weiser, Stapler & Spivak,* 517 Pa. 522, 539 A.2d 357 (1988)).

■ With his appointment, the chapter 7 trustee in the above cases became the sole representative of debtors' estates. *See Vreugdendhil v. Hoekstra,* 773 F.2d 213, 215 (8th Cir.1985). As trustee, he became the successor-in-interest to all pre-petition causes of action belonging to debtors. *See Jones v. Harrell,* 858 F.2d 667, 669 (11th Cir.1988) (*citing Miller v. Shallowford Community Hospital,* 767 F.2d 1556, 1559 (11th Cir.1985). The interest in the cause of action against KL & R, Mini–Miners, Reardon, and Kelly passed to the chapter 7 trustee even though it was not listed on debtors' bankruptcy schedules. *See Carlock v. Pillsbury Co.,* 719 F.Supp. 791, 856 (D.Minn.1989).

Debtors' contention that the cause of action was not sold to KL & R because no cause of action was included among the assets referenced in the notice of sale is without merit and may be disingenuous.

■ Notice of a sale other than in the ordinary course of business of property other than cash collateral must be given pursuant to Bankruptcy Rule 2002. See Federal Rule of Bankruptcy Procedure 6004(a).

Federal Rule of Bankruptcy Procedure 2002 provides in relevant part as follows:

(1) *Proposed Use, Sale or Lease of Property.* Subject to Rule 6004 the notice of a proposed … sale … of property … shall include the time and place of any public sale. … The notice of a proposed … sale … of property, including real estate, is sufficient if it generally describes the property.

■ Notice the trustee provided of the sale complies with these requirements. The time and place of the sale were set forth. In addition, the notice "generally described" the property subject to the sale. In particular, it specified that the sale included "other personal property, both tangible and intangible". This phrase was adequate to place any reasonably informed interested party or respondent that causes of action might be included. The fact that the notice did not specifically refer to causes of action is not fatal.

Moreover, the trustee made clear on the record in response to queries from the court that he proposed selling all personal property listed by debtors on their schedules. He further indicated that any pre-petition causes of action in which debtors once had an interest also were included among the intangibles being sold, even though they were not specifically mentioned on the lists of property being sold. Based upon these representations, the court understood that any pre-petition causes of action were included among the assets being sold when the court issued its order confirming the sale to KL & R for $20,000.00.

This understanding was further bolstered by the response filed by debtor, as well as their oral argument at hearing. Specifically, debtors and their counsel argued against the sale going forward averring that the assets to be sold, including this $1.7 million cause of action, had a value well in excess of the initial bid. For debtors now to argue that this cause of action was not included in the package of assets to be sold appears at best disingenuous. Debtors knew what was to be sold and had an opportunity to bid on this "bargain". The fact that neither debtors nor any of the other "deep pockets" in the courtroom saw fit to bid speaks clearly to the value of these assets. We are confident that there is merit in the initial bidder's position that it already owned the assets in question and was merely buying peace by offering the cost of defense. We are equally confident that all parties-in-interest knew what was to be sold and had an opportunity to bid. We

see no basis for debtor's legal position then or now.

The outcome would not be any different even if the cause of action set forth in debtors' counterclaim was not sold to KL & R and somehow remained an asset of debtors' bankruptcy estates.

■ We already have determined that the interest in that cause of action passed to the chapter 7 trustee upon his appointment and that debtors no longer had any interest therein. Once that interest passed to the trustee as the duly-appointed representative of the estate, *only* the trustee or a duly-appointed representative of the estate could prosecute that cause of action. *See Chrysler Credit Corp. v. BJM, Jr., Inc.*, 834 F.Supp. 813, 839 (E.D.Pa.1993). A chapter 7 debtor (in contrast to a debtor-in-possession) lacks "standing" to bring the cause of action on its own. *See Carlock*, 719 F.Supp. at 856.

■ It is perhaps worth noting that the prohibition against a chapter 7 debtor prosecuting a cause of action when the chapter 7 trustee has refused (or failed) to do so is not absolute. For instance, a chapter 7 debtor may, under certain limited circumstances, bring an avoidance action when the chapter 7 trustee has not done so. *See In re Wimbish*, 95 B.R. 379 (Bankr.W.D.Pa.1989).[1] This exception does not apply here, however, because debtors are not seeking to avoid any transfer of their property. They seek instead to recover monetary damages for an alleged breach of contract.

■ Debtors' other contention that they may bring the cause of action on their own because the chapter 7 trustee "in effect abandoned it" when he consented to the dismissal of the complaint at Adversary No. 94–2104–BM also is without merit. For bankruptcy purposes, "abandonment" is a term of art having special requirements. It differs in critical respect from the term as it often is used in common parlance.

The Bankruptcy Code addresses the matter of abandonment as follows:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554.

■ Abandonment may be accomplished in a bankruptcy context in either of two ways. *During the case*, it may be abandoned by court order authorizing or directing abandonment (Section 554(a) or (b)). *Once the case has been closed*, it may be abandoned by operation of law (Section 554(c)). *See In re Pace*, 146 B.R. 562, 564 (9th Cir. BAP 1992).

■ Unless the court directs otherwise, the party requesting abandonment pursuant to § 554(a) or (b) must give notice thereof to the United States trustee, all creditors, and any duly-elected or -appointed committees. *See* Federal Rule of Bankruptcy Procedure 6007(a). Estate property may not be "administratively abandoned"—i.e., abandoned without judicial involvement and order of court—pursuant to § 554(a). *See In re Shoearama, Inc.*, 137 B.R. 182, 187

---

1. A chapter 7 debtor may exercise the trustee's avoidance powers when:
    (1) the trustee has not sought and will not seek in the future to avoid the transfer;
    (2) the trustee has the ability to avoid the transfer;

    (3) the transfer debtor seeks to avoid must have been involuntary and the property must not have been concealed; and
    (4) the property debtor seeks to avoid must be exemptible.
*In re Wimbish*, 95 B.R. at 386.

(Bankr.W.D.Pa.1992). Property abandoned pursuant to § 554(a) or (b) ceases to be part of the bankruptcy estate and reverts to the debtor as if no bankruptcy had ever been filed. *See In re Dewsnup*, 908 F.2d 588 (10th Cir.1990), *cert. denied*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

■ Before property can be abandoned pursuant to § 554(c), it must be scheduled pursuant to § 521(1) of the Code. *See Vreugdendhil*, 773 F.2d at 215.

Section 554(c) is not applicable here. The above bankruptcy cases have not been closed and debtors have not scheduled the cause of action stated in their counterclaim as an estate asset. If the cause of action was abandoned, it occurred pursuant to § 554(a) or (b).

■ The requirements for abandonment pursuant to § 554(a) or (b) were not met in this instance. Neither the chapter 7 trustee nor any party-in-interest ever formally requested abandonment of the cause of action. As a consequence, no notice of such a request was ever served upon the United States trustee and all creditors, as required by Rule 6007(a). In addition, no hearing was ever held on such matter and no order authorizing or directing abandonment was ever issued by the court.

The suggestion that, in some sense of the word, the trustee "in effect abandoned" the cause of action when he consented to dismissal of Adversary 94–2104–BM is refuted by the record. When he conceded to dismissal, the trustee did so without prejudice to his right to bring a future adversary action, if he deemed one appropriate. In consenting to dismissal without prejudice, the trustee preserved the right to pursue that cause of action in the future. Such a position is inconsistent with any suggestion that the trustee "abandoned" the cause of action, even as the word is used in common parlance. To the contrary, rather than abandon the cause of action, the trustee chose to seek and secure a final order of court selling and/or settling same.

Debtors' counterclaim shall be dismissed.

## B. *The Complaint*

As indicated, plaintiffs Mini–Miners, Reardon, and Kelly also have requested that their complaint be "withdrawn", provided that debtors' counterclaim is dismissed. They in effect are asking for a voluntary dismissal of the complaint.

Federal Rule of Bankruptcy Procedure 7041 provides as follows:

> Rule 41 F.R.Civ.P. applies in adversary proceedings, except that a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper.

Federal Rule of Civil Procedure 41 provides in pertinent part as follows:

> (2) *By Order of Court.* Except as provided in paragraph (1) of this subdivision, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

The requisite notice was provided in this instance. Notice of the motion and of the hearing thereon was given to the United States trustee and to the chapter 7 trustee as well as to debtors.

■ Voluntary dismissal pursuant to Rule 41(a)(2) lies within the sound discretion of the trial court. *See Sinclair v. Soniform*, 935 F.2d 599, 603 (3d Cir.1991) (*citing Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir.1974)). When exercising its discretion, the court should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for the protection of defendants. *See Fisher v. Puerto Rico Marine Management, Inc.*, 940 F.2d 1502, 1503 (2d Cir.1991). It should be allowed unless the defendant will suffer some plain prejudice aside from the prospect of facing a second lawsuit later on. *Id.*

■ Debtors will not be prejudiced by dismissal of the complaint against them. To the contrary, they will benefit to the extent that they will not have to defend against a lawsuit objecting to the dischargeability of certain debts.

The requirements that any pending counterclaim brought by a defendant shall not be affected by voluntary dismissal of the complaint does not apply in light of the dismissal of their counterclaim.

Plaintiffs' motion to withdraw the complaint at Adversary No. 94–2316–BM shall be granted as defendants have not objected thereto and as they would appear to suffer no resulting prejudice therefrom.

An appropriate order shall be issued.[2]

### ORDER OF COURT

AND NOW at Pittsburgh this 19th day of January, 1995, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that the complaint in the above-captioned adversary action and the counterclaim in the above-captioned adversary action be and are **DISMISSED.**

IT IS SO **ORDERED.**

---

2. In light of the voluntary dismissal of plaintiffs' complaint and the involuntary dismissal of debt- ors' counterclaim, there is no need to address debtors' motion to compel discovery.