**Robert NEVILLE, Beverly Neville, Appellants,**

v.

**Elaine HARRIS, Trustee, Appellee.**

**Civil A. No. 95–3317 (AJL).**

United States District Court, D. New Jersey.

Jan. 6, 1996.

Alan R. Kaplan, Brian R. Quentzel, Engle-
wood, New Jersey, for Appellants.

Richard D. Trenk, Ira M. Levee, Mary E.
Seymour, Ravin, Sarasohn, Cook, Baumgar-
ten, Fisch & Baime, Roseland, New Jersey,
for Appellee.

1. All references to "Section" herein are to Title
11 of the United States Code.

2. In support of the instant appeal, the Nevilles
submitted: Brief of the Debtors/Appellants, Rob-
ert Neville and Beverly Neville (the "Moving
Brief") attaching Certification by Brian R.
Quentzel in Further Opposition to Reopening the
Case ("Quentzel Cert."); Reply Brief of the Debt-
ors/Appellants, Robert Neville and Beverly Ne-
ville (the "Reply Brief"); Certification of Alan
Kaplan, Esq. in Opposition to Reopening the
Case ("Kaplan Cert."); a Designation of the
Items to be Included in the Appellate Record and
a Statement of the Issues to be Presented.

In opposition to the instant appeal, the Trustee
submitted: Brief on Behalf of Appellee, Elaine
Harris, Chapter 7 Trustee; Revised Brief of Ap-
pellee, Elaine Harris, Chapter 7 Trustee (the
"Opposition Brief"); Certification of Richard
Trenk, Counsel to the Trustee ("Trenk Cert.").

## OPINION

LECHNER, District Judge.

This is an appeal by debtors Robert Ne-
ville and Beverly Neville (the "Nevilles")
from an order (the "Order") of the United
States Bankruptcy Court for the District of
New Jersey (the "Bankruptcy Court"). The
Order directed the Nevilles' Chapter 7 Bank-
ruptcy case (the "Case") be reopened, pursu-
ant to Section 350(b),[1] upon a motion by
trustee Elaine Harris (the "Trustee").[2] Ap-
pellate jurisdiction in this court exists under
28 U.S.C. § 158(a). For the reasons set
forth below, the Order is affirmed.

*Facts and Procedural History*

The Nevilles opened the Case by filing a
petition (the "Petition") under Chapter 7 of
the Bankruptcy Code, on 21 May 1993. *See*
Discharge Order. At that time, there were
unsecured nonpriority claims against the Ne-
villes in the amount of $129,000.00. Tr. at
14. The Petition included a form schedule
requiring a description and estimated value
for all of the Nevilles' "contingent and unliq-
uidated claims of every nature, including tax
refunds, counterclaims of the debtor, and
rights to setoff claims." The Nevilles listed
in the Petition a "[c]laim against prior attor-
ney, now in litigation," of "unknown value"
(the "Lawsuit").[3] *See* Kaplan Cert., ¶ 3 &
Exhibit (Petition, Schedule B). The total
reported estimate of all assets listed on the
page of the Petition where the Nevilles re-
ported the Lawsuit was $7,600.00. *Id.* The

Also considered were: the transcript (the
"Tr.") of a hearing, (the "Hearing") before the
Bankruptcy Court on 22 May 1995; a Supple-
mental Certification in Support of Trustee's Mo-
tion to Reopen Case, dated 12 April 1995 (the
"Supplemental Cert."), attaching one exhibit; a
Discharge Order of the Bankruptcy Court, dated
9 September 1993 (the "Discharge Order"); the
"Trustee's Report of No Distribution" (the
"Trustee's Report"), filed 5 October 1993.

3. The Trustee states the Lawsuit was not listed as
an asset on the schedules filed with the Petition.
Trenk Cert., ¶ 3. As stated, however, the Nevilles
have submitted a copy of a personal property
schedule that they allege was submitted with the
Petition; the Lawsuit is listed in the schedule.
The Trustee acknowledges that the Lawsuit was
listed on the schedule submitted with the Ne-
villes' Petition. *See* Opposition Brief at 2.

Lawsuit[4] is a legal malpractice action filed by the Nevilles against an attorney, Juan Espinosa ("Espinosa") who represented them in a matter prior to their filing of the Petition. *Id.*, ¶ 4.

On 10 June 1993, the Trustee was appointed. The Trustee held a meeting with creditors, pursuant to Section 341(a) (the "341 Meeting"), on 15 July 1993. The Nevilles were present at that meeting and the Trustee questioned them about the Lawsuit. Supplemental Cert., ¶ 2; Kaplan Cert., ¶ 4. At the 341 Meeting, the Nevilles informed the Trustee that they would provide her with additional information about the Lawsuit. Kaplan Cert., ¶ 4. The Nevilles contend that, "[i]n the minutes[5] [of the 341 Hearing], the Trustee acknowledged that she anticipated the abandonment of [the Lawsuit], that the assets were not in excess of liens and exemptions, and that she did not request the amendment of schedules." Moving Brief at 3.

In response to the Trustee's request for additional information about the Lawsuit, counsel for the Nevilles sent the Trustee a letter, dated 22 July 1993 (the "22 July Letter"). Kaplan Cert., ¶ 5, & Exhibit (22 July Letter). The 22 July Letter discusses several matters, including the Lawsuit. Approximately two and one-half pages of the 22 July Letter are devoted to the Lawsuit. *Id.*

The 22 July Letter indicates that Espinosa represented the Nevilles in a partial transfer of a family business and in related litigation. The 22 July Letter states the Nevilles allege Espinosa, who negotiated a settlement of litigation between the Nevilles and other parties, stipulated on the record, against the express wishes of the Nevilles, that the Nevilles would personally guaranty certain payments by them to their adversaries. Kaplan Cert., Exhibit (22 July Letter). The 22 July Letter indicates the Nevilles filed the Lawsuit in August 1992, and also indicates the Nevilles attribute their need to file for protection under Chapter 7 to the negligence of Espinosa. *Id.* In the 22 July Letter, counsel stated that the Nevilles estimate the monetary value of their claims against Espinosa at $275,000.00. *Id.* Counsel declined to offer his own professional opinion of the merits of the Lawsuit, stating "[w]hether or not [the Nevilles] will be successful, and if successful, what the award will be, I do not know." *Id.* The 22 July Letter indicates the Nevilles were responsible for advancing all costs related to the Lawsuit and that they agreed to a standard one-third contingency fee agreement with counsel representing them in the Lawsuit. *Id.* Finally, the 22 July Letter requests a decision indicating whether the Trustee will be administering the Lawsuit. *Id.*

The Nevilles state that the Trustee advised them, by telephone, on an unspecified date, that the Trustee did not intend to pursue the Lawsuit on behalf of the Nevilles' estate (the "Estate"). Kaplan Cert., ¶ 6. The Nevilles also state that they relied on the "Trustee's oral representations" and thereby gave their money and time to advance the Lawsuit. *Id.*, ¶ 9. Specifically, the Nevilles have established that they have incurred deposition and expert witness costs of $4,121.00 and expect to spend an additional $2,500.00 for expert witnesses in the event the Lawsuit proceeds to trial. Quentzel Cert., ¶ 3.

The Bankruptcy Court granted the Nevilles a discharge on 9 September 1993. *See* Discharge Order. On 5 October 1993, the Trustee filed a report with the Bankruptcy Court, certifying that the Estate was fully administered and that "there is no property available for distribution from the [E]state over and above that exempted by law." Trustee's Report at 2. The Case was closed and the Trustee was discharged on 29 October 1993. Moving Brief at 4; Opposition Brief at 3. The Nevilles have established that Espinosa submitted a letter to the Bankruptcy Court, dated 20 October 1994 (the "20 October Letter"), requesting the Bankruptcy Court reopen the Case. Kaplan Cert., ¶ 9 & Exhibit (20 October Letter). The Nevilles allege Espinosa requested the Bankruptcy Court reopen the Case to "attempt[ ] to re-

---

**4.** *Neville v. Espinosa*, No. BER–L–9326–92, Superior Court of New Jersey, Bergen County. Trenk Cert., ¶ 2.

**5.** On appeal, only page one of the minutes of the 341 Hearing has been submitted.

move the [Nevilles'] motivation from actively proving that he committed legal malpractice." *Id.,* ¶ 10.

Following the close of the Case, some creditors of the Nevilles contacted the Trustee concerning the award potential of the Lawsuit. Supplemental Cert., ¶ 3. Upon the motion of the Trustee, the Bankruptcy Court held the Hearing on 22 May 1995 to decide whether to reopen the Case. On that date, the Bankruptcy Court ruled from the bench, holding that there was cause to reopen the Case, pursuant to Section 350(b). Tr. at 13–16. The Bankruptcy Court also directed the United States Trustee to appoint a trustee to decide whether to pursue the Lawsuit for the Estate, and denied a sanctions motion by the Nevilles.[6] *Id.* at 16. The Bankruptcy Court did not sign and file the Order until 22 June 1995, when the Trustee submitted a proposed order to the Bankruptcy Court. In the interim, the Nevilles filed a notice of appeal, on 7 June 1995.

*Discussion*

■■■ The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal. The factual determinations of the bankruptcy court must be given conclusive effect unless they are "clearly erroneous." *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.,* 57 F.3d 1215, 1223 (3d Cir.1995); *In re Brown,* 951 F.2d 564, 567 (3d Cir.1991). Legal conclusions of a bankruptcy court, however, are subject to plenary review by the district court. *In re DeSeno,* 17 F.3d 642, 643 (3d Cir.1994); *FRG, Inc. v. Manley,* 919 F.2d 850, 854 n. 8 (3d Cir.1990). Where a case presents mixed questions of law and fact, it is appropriate to apply the relevant standard to each component of the issue. *In re Sharon Steel Corp.,* 871 F.2d 1217, 1222–23 (3d Cir.1989).

■■■ Section 350 provides in pertinent part:

A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

Section 350(b). A decision by the Bankruptcy Court to reopen a case under Section 350(b) is reviewed for abuse of discretion. *In re Thompson,* 16 F.3d 576, 581–82 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2709, 129 L.Ed.2d 836 (1994); *In re Cisneros,* 994 F.2d 1462, 1464–65 (9th Cir.1993); *In re Fossey,* 119 B.R. 268, 271 (D.Utah 1990) (citing *In re Atkinson,* 62 B.R. 678, 679 (Bankr. D.Nev.1986)). The Nevilles argue that the Bankruptcy Court abused its discretion by reopening the Case because all assets of the Estate were irrevocably abandoned to them under Section 554(c). Moving Brief at 6; Reply Brief at 3.

Analysis must begin with Section 541, which defines property of an estate in bankruptcy. Section 541(a)(1) broadly defines property of an estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* There are exceptions to this general rule, but none applies here. Section 554(c) provides:

Unless the court orders otherwise, any property scheduled under [S]ection 521(1)[7] ... not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of [S]ection 350.

Section 554(c). Section 554(d), however, states:

Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

Section 554(d).

■■■ The Lawsuit is based upon events occurring prior to the filing of the Petition.

6. The Bankruptcy Court observed that it lacked the authority to reappoint Elaine Harris, who was Trustee during the administration of the Case, stating it only had the authority to reopen the Case and direct the United States Trustee to appoint a trustee to "administer and preserve unadministered assets." Tr. at 15. It appears the United States Trustee reappointed Elaine Harris because she has acted as Trustee for purposes of the instant appeal.

7. Section 521(1) requires the debtor to "file a list of creditors ... assets ... current income, and a statement of the debtor's current financial affairs."

Accordingly, the Lawsuit is a cause of action existing at the time the Nevilles filed the Petition and became property of the Estate when the Petition was filed. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2314 n. 9, 76 L.Ed.2d 515 (1983); *In re Brateman Bros., Inc.*, 135 B.R. 853, 855 (Bankr.N.D.Ind.1991); *In re Atkinson*, 62 B.R. at 679 (citing *Miller v. Shallowford Comm. Hosp., Inc.*, 767 F.2d 1556, 1559 (11th Cir.1985)). The instant matter turns upon whether the Trustee, by acts or omissions, abandoned the Lawsuit pursuant to Section 554(c).

■ The party seeking to prove abandonment under Section 554 has the burden of persuasion. *Mele v. First Colony Life Ins. Co.*, 127 B.R. 82, 85 (D.D.C.1991) (citing *Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir.1974); *Barletta v. Tedeschi*, 121 B.R. 669, 672 (Bankr.N.D.N.Y. 1990)).

■ The Nevilles cite *Starrett v. Starrett*, 225 N.J.Super. 150, 541 A.2d 1119 (App.Div. 1988) for a two-part test set out in that decision to define abandonment under Section 554(c). Moving Brief at 8 (citing *Starrett*, 225 N.J.Super. at 156–57, 541 A.2d 1119). As discussed below, that case does not support the Nevilles' argument. In addition, the Nevilles have not offered any case law holding that state law definitions of abandonment apply to that term in the context of Section 554. Courts considering the issue have uniformly applied Federal precedent to define the term abandonment. *See, e.g., In re Lansberry*, 177 B.R. 49, 56–57 (Bankr. W.D.Pa.1995); *Mele*, 127 B.R. at 85–86; *In re Prospero*, 107 B.R. 732, 734 (Bankr. C.D.Cal.1989); *In re Schmid*, 54 B.R. 78, 80 (Bankr.D.Or.1985). A Federal law definition of abandonment under Section 554 is also appropriate because abandonment "is a term of art. . . . differ[ing] in critical respect from the term as it often is used in common parlance." *Lansberry*, 177 B.R. at 56.

■ There is a paucity of case law concerning abandonment as a matter of law under Section 554(c). A leading commentator emphasizes the prefatory language of that section, which reads "[u]nless the court orders otherwise. . . ." 4 Lawrence P. King et al., Collier on Bankruptcy ¶ 554.02[5] (15th ed. 1995). "Because this presumption of abandonment is subject to the court order to the contrary, . . . it is likely that only burdensome or valueless property will be thus abandoned." *Id.*

■ The facts of the instant *case indicate* the failure of the Trustee to administer the Lawsuit resulted from inadvertence. In these circumstances, the Bankruptcy Court did not abuse its discretion by reopening the Case. The abandonment provisions of the Code were meant to permit a trustee to relinquish estate property that was either worthless or not worth the expense of administering. In fact, prior to the enactment of the Bankruptcy Reform Act of 1978 (the "1978 Act"), a trustee could not abandon estate assets without approval from a bankruptcy court. *See In re Teltronics Svcs., Inc.*, 762 F.2d 185, 189 (2d Cir.1985) (citing *In re Ira Haupt & Co.*, 398 F.2d 607, 613 (2d Cir.1968)). Such an interpretation is consistent with the policy underlying the Bankruptcy Code.

■ The Bankruptcy Code is meant to provide debtors with a fresh start following a discharge and to require all creditors to share estate assets pro rata, rather than permitting some to "jump to the head of the class" at the expense of others. To sanction inadvertent abandonment of a potentially valuable Estate asset after the close of the Case would be inconsistent with the policy behind the Bankruptcy Code, particularly because the Nevilles had $129,000.00 in unsecured nonpriority debts when they filed the Petition. Indeed, a trustee only had an implied power of abandonment under the Bankruptcy Act of 1898, and the legislative history of the 1978 Act, which first codified abandonment, indicates an intent to provide for abandonment only in the case of assets without value to the estate. *See* S.Rep. No. 595, 95th Cong., 2d Sess. 92 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5878 ("Under [Section 554] the court may authorize the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate.").

Case law also supports this interpretation. In *Schmid,* the debtor objected to the trustee's motion to reopen the case, claiming that the trustee had abandoned to him the proceeds of a lawsuit. 54 B.R. at 79. After determining that the trustee's failure to administer the proceeds of the lawsuit was inadvertent, the court decided that "[a]bandonment of an asset of the estate, like the sale of an estate asset back to the debtor, has to be the result of an intelligent decision...." *Id.* at 80. The *Schmid* court determined the appropriate test in those circumstances was whether "an intent to abandon [can] be imputed to the trustee." *Id.* at 81. In the alternative, *Schmid* determined that any abandonment was the product of mistake and could be revoked under Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b). *Id.* at 81.

In *Mele,* the debtor had filed for protection under Chapter 7 sixteen months after commencing a discrimination suit. The debtor informed the trustee of that lawsuit and the trustee was provided with a copy of the complaint. 127 B.R. at 83. Thereafter, the debtor obtained a discharge. The defendant in the civil suit then moved to substitute the trustee for the debtor as plaintiff. The debtor countered by arguing that the trustee abandoned the lawsuit under Section 554(c). *Id.* at 84.

The *Mele* court granted the motion to substitute the trustee for the debtor as plaintiff in the lawsuit after determining that the trustee had not abandoned the lawsuit under Section 554(c). 127 B.R. at 85. In so holding, the court held that the mere fact that the trustee was notified of a pending lawsuit but failed to administer it "will not necessarily mandate a finding of implied abandonment." *Id.* To prove implied abandonment, it must be shown "at a minimum that the trustee made a reasonable inquiry consistent with his statutory duties *to the estate* and *to the creditors* as to the value of the estate property...." *Id.* at 86 (emphasis in original).

The Nevilles have also argued it is inequitable to reopen the Case because they have expended their funds on depositions and experts, relying upon the Trustee's implied abandonment of the Lawsuit. Moving Brief at 11–12. The Nevilles, however, have not argued that the Trustee would not reimburse them for these costs in the event the Lawsuit resulted in a settlement or favorable verdict. *Cf. Prospero,* 107 B.R. at 733–35 (home held not abandoned to debtors, even though trustee made no mortgage or real estate payments on the home during the pendency of the case; debtors made all such payments during and after the close of the case); *see* Tr. at 14 (Bankruptcy Court observed that the Nevilles could be reimbursed by the Trustee if Lawsuit were successfully prosecuted).

The case law cited by the Nevilles is unavailing. As stated, *Starrett,* 225 N.J.Super. 150, 541 A.2d 1119, is not controlling. Nonetheless, the *Starrett* Section 554(c) abandonment analysis is useful. Under the *Starrett* analysis, a finding of abandonment by operation of law first requires proof by the party asserting abandonment that "the trustee had knowledge of the asset as property to the estate such that the court could impute an intent to abandon the asset upon the closing of the case." *Id.* at 156, 541 A.2d 1119. In the instant matter, although the Bankruptcy Court did not make any findings as to the Trustee's knowledge of the Lawsuit, it was scheduled, discussed at the 341 Hearing and was the subject of correspondence between the Trustee and the Nevilles. Accordingly, it appears the Trustee was aware of the Lawsuit.

The second part of the *Starrett* analysis requires an inquiry whether "[t]he claiming party ... show[s] an absence of active administration of the asset at the time of abandonment." *Id.* at 157, 541 A.2d 1119. In the instant matter, the Bankruptcy Court did not make findings as to whether the Trustee actively pursued the Lawsuit. The parties dispute whether the Trustee had sufficient information to decide whether to pursue the Lawsuit. The 22 July Letter discussed the Lawsuit, and requested the Trustee inform the Nevilles whether she planned to administer the Lawsuit. The Nevilles state that the Trustee then informed them, by telephone, that she would not pursue the Lawsuit. Kaplan Cert., ¶ 6. The Trustee contends she

was not provided sufficient information to decide whether to pursue the Lawsuit. Opposition Brief at 3 (stating that the Trustee's request for copies of the pleadings in the Lawsuit was ignored).

The critical distinction between *Starrett* and the instant matter is that in the former case, the trustee made attempts to collect on the asset at issue, another lawsuit, and later abandoned his efforts because the estate lacked the resources to prosecute the lawsuit and it also appeared unlikely that the trustee would realize any award in the lawsuit. *Id.* at 159, 541 A.2d 1119. There the court observed that the estate lacked the resources "to continually pursue defendant for collection of [the] judgment and thus, the asset was a burden to the estate." *Id.* Further, the *Starrett* court concluded that collection by the trustee in that matter "appeared unlikely." *Id.* In the instant case, however, it appears that the failure of the Trustee to administer the Lawsuit resulted from inadvertence.

In addition, the *Starrett* court did not consider the "unless the court orders otherwise" language of Section 554(c), which the Bankruptcy Court relied upon to reopen this Case. The Bankruptcy Court observed that, under Section 554(c), "the court can order otherwise. And it is quite clear that the reason for that is cases such as this, where the court might find there is a valuable asset that should have been administered by the [T]rustee." Tr. at 13. Although it is plausible that the prefatory language of Section 554(c) was meant only to apply to court orders issued prior to the close of a case, *see* Reply Brief at 6, there is an absence of case law to suggest the prefatory language does not apply to orders issued, as here, after a case is closed.

The Nevilles argue that *Miller,* upon which the Bankruptcy Court relied, is inapposite. The issue in *Miller* was whether the debtor was entitled to certain insurance proceeds under state law at the time he filed for

protection under Chapter 7. 767 F.2d at 1560–61. In that case, the debtor received the insurance proceeds nearly one year after his bankruptcy case was closed. *Id.* at 1558–59. If the *Miller* debtor was entitled to those proceeds at the time he filed the bankruptcy petition, any proceeds he ultimately recovered would have been property of his bankruptcy estate. *Id.* at 1559.

The *Miller* court did not perform an abandonment analysis under Section 554(c). Instead, it considered whether the lower court had correctly reopened the case under Section 350(b) to administer newly-discovered assets of the debtor. 767 F.2d at 1559 n. 4 & 1560. The *Miller* court held that the debtor was entitled to the proceeds at the time he filed his bankruptcy petition, thereby entitling creditors to a portion of those proceeds. The *Miller* creditors were entitled to share in the proceeds, even though the debtor received them long after the case was closed. *Id.* at 1560–61. As the Nevilles indicate, the debtor failed to schedule the proceeds at issue in *Miller,* and unscheduled assets cannot be abandoned under Section 554(c); they remain part of the estate pursuant to Section 554(d). *See, e.g., In re Harris,* 32 B.R. 125, 127 (Bankr.S.D.Fla.1983). Nonetheless, for the reasons stated, the decision of the Bankruptcy Court, holding that the Trustee did not abandon the Lawsuit, was not an abuse of discretion.

The Nevilles' reliance upon *In re McGowan,* 95 B.R. 104 (Bankr.N.D.Iowa 1988) is misplaced. All parties to *McGowan* had stipulated that the trustee voluntarily abandoned the relevant property pursuant to Section 554(a). *Id.* at 105. There the issue was whether the taxable gain realized from abandonment of the assets was chargeable to the estate or to the debtor.[8]

Although the *McGowan* court did state "[s]cheduled property not otherwise administered at the time of the closing of the case is abandoned to the debtor by operation of

---

8. The decision does not specifically state how taxable gain resulted from the voluntary abandonment of the property. It appears the abandoned asset was purchased on credit, the value of the asset was less than the debt remaining and the creditor took the asset in satisfaction of the debt, agreeing to forego any proof of claim for the deficiency. It further appears the debtor, who was relieved of the deficiency, thereby incurred taxable gain for debt forgiven. *See* 26 U.S.C. § 108 (income from discharge of indebtedness).

law," *id.* at 106, that statement was dictum. Immediately before that statement, the court also observed "[a] trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." *Id.* Here, the property allegedly abandoned is not "of inconsequential value."

*In re Bryson,* 53 B.R. 3 (Bankr.M.D.Tenn. 1985), also cited by the Nevilles, concerned express abandonment under Section 554(a). *Id.* at 4. The trustee in *In re Brittingham, Inc.,* 39 B.R. 575 (Bankr.D.Del.1984), cited by the Nevilles, had expressly abandoned a leasehold interest; there was no issue of implied abandonment. *Id.* at 576. *In re Sutton,* 10 B.R. 737 (Bankr.E.D.Va.1981), also cited by the Nevilles, also concerned express abandonment. There the issue was whether the abandonment was revocable. *Id.* at 738.

The Nevilles also analogize to *Barletta, see* Reply Brief at 7–8, where the court determined the trustee had abandoned to the debtors a lawsuit under Section 554(c). 121 B.R. at 673. In that case, however, the trustee confirmed his desire to abandon the lawsuit by signing and returning a letter to that effect which he received from the debtor's counsel. *Id.* at 671. There was no issue whether the trustee had abandoned the lawsuit in *Barletta.* Instead, the defendant in the lawsuit argued, without success, that the debtor-plaintiff lacked standing to prosecute the lawsuit because it was filed during the pendency of the plaintiff's bankruptcy proceeding, the lawsuit was scheduled on the petition as an asset, and, therefore, only the trustee had standing to bring the lawsuit. *Id.* at 673 (citing *Brown v. O'Keefe,* 300 U.S. 598, 602, 57 S.Ct. 543, 546, 81 L.Ed. 827 (1937)). Finally, *In re Enriquez,* 22 B.R. 934 (Bankr.D.Neb.1982), also cited by the Nevilles, is inapposite. In that case, the parties agreed that the trustee filed an abandonment; they later disputed whether the abandonment was revocable. *Id.* at 935–36. Here, however, the parties dispute whether the trustee actually abandoned the Lawsuit as a matter of law under Section 554(c).

Because the determination of the Bankruptcy Court, that the Trustee did not aban-don the Lawsuit under Section 554(c), was not an abuse of discretion, the Lawsuit remains the property of the Estate. *See* Section 554(d).

 The Nevilles also argue that the doctrine of judicial estoppel precludes the Trustee from arguing to reopen the Case to administer the Lawsuit. Moving Brief at 12 (citing *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3d Cir.)), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). The Nevilles argue that the Trustee was aware of the Lawsuit while the Case was pending, the Trustee discussed the Lawsuit at the 341 Meeting and the Trustee indicated, by telephone, that she would not pursue the Lawsuit on behalf of the Estate. Moving Brief at 13. The Nevilles also argue that the Trustee had sufficient information concerning the Lawsuit to decide whether to pursue it, and that the Trustee filed the Trustee's Report on 5 October 1993. In the Trustee's Report, she stated that she "made a diligent inquiry into the financial affairs of the debtor(s) and the location of property belonging to the [E]state; and that there is not property available for distribution from the [E]state...." *Id.* Judicial estoppel, however, is inapplicable on these facts.

The Third Circuit has defined the doctrine of judicial estoppel as follows: "[A] party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits." *Scarano v. Central R.R.,* 203 F.2d 510, 513 (3d Cir.1953) (quotations and citations omitted); *see Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895) (setting out the parameters of the doctrine in general terms); *Delgrosso v. Spang & Co.,* 903 F.2d 234, 241 (3d Cir.) ("Unlike the concept of equitable estoppel, which focuses on the relationship between the parties, judicial estoppel focuses on the relationship between the litigant and the judicial system...."), *cert. denied,* 498 U.S. 967, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990); *Oneida,* 848 F.2d at 419. More precisely, the Circuit has also stated that judicial estoppel bars a litigant from "playing 'fast and loose with the courts'" in

an attempt to "contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention." *Scarano,* 203 F.2d at 513 (citation omitted); *see In re Walnut Assocs.,* 145 B.R. 489, 498 (Bankr.E.D.Pa.1992) ("the [judicial estoppel] doctrine must be applied with 'caution.' ") (citations omitted).

The Nevilles cite *Oneida* in support of their judicial estoppel argument. In *Oneida,* the defendant bank (the "Bank") was the largest creditor of the plaintiff, a Chapter 11 debtor (the "Debtor"). The Debtor, a committee of unsecured creditors and the Bank reached a settlement, which the bankruptcy court subsequently confirmed, in an order, dated 30 September 1985. 848 F.2d at 415. A judgment and order, dated 14 January 1986, further detailed the extent and validity of the Bank's lien on the Debtor's property. The Debtor's Chapter 11 plan of reorganization was then confirmed, on 14 August 1986. *Id.* at 415–16. On 11 March 1987, the Debtor commenced an action against the Bank in state court. The gravamen of the Debtor's state-court action was that the Bank had breached its credit agreements with the Debtor, thereby forcing the Debtor into bankruptcy.

After the Bank removed the Debtor's state-law action, the Third Circuit affirmed a district court decision dismissing the complaint. The Circuit held that the Debtor was judicially estopped from bringing its state-law claims because the Debtor failed to disclose any potential claims against the Bank while the parties negotiated the Debtor's Chapter 11 Plan, even though the Debtor previously had several procedural opportunities to raise those claims. 848 F.2d at 417–20.

 *Oneida* does not support a judicial estoppel argument in this matter. In *Oneida,* the Debtor's state-law claims against the Bank called into question the Bank's right to collect its secured debt and constituted a "collateral attack on the bankruptcy court's order confirming the reorganization plan." 848 F.2d at 418. To validate the Nevilles' judicial estoppel argument, however, would be equivalent to ruling that a bankruptcy case could never be reopened to administer a scheduled but previously-unadministered asset. Such a bar is at odds with case law reviewing motions to reopen a case to administer a scheduled asset. *See, e.g., Mele,* 127 B.R. at 85–87; *Schmid,* 54 B.R. at 80–81. Further, as the Trustee observes, she never issued a formal notice to indicate specifically that she wished to abandon the Lawsuit. The Trustee did not take one position concerning the Lawsuit during the pendency of the Case and take a contrary position after the case closed. Rather, it appears the Trustee failed to adopt formally any position vis-a-vis the Lawsuit during the pendency of the Case.[9]

### Conclusion

Based upon the foregoing, the Bankruptcy Court did not abuse its discretion in issuing the Order to reopen the Case. Accordingly, the Order is affirmed.

---

**9.** The Nevilles summarily raised a *res judicata* argument to the Trustee's motion to reopen the Case, although they offered no case law or argument on that point. Moving Brief at 12. The doctrine of claim preclusion, once known as *res judicata,* "gives dispositive effect to a prior judgment if a particular issue, though not litigated, could have been raised in the earlier proceeding." *Board of Trustees v. Centra,* 983 F.2d 495, 504 (3d Cir.1992). Claim preclusion requires a final judgment on the merits in a prior suit, involving the same parties or parties in privity with them, and a subsequent suit based on the same cause of action. *Id.* (citing *United States v. Athlone Indus., Inc.,* 746 F.2d 977, 983 (3d Cir. 1984)). The purpose of the doctrine is to require a plaintiff to present all claims arising out of the same occurrence in a single lawsuit. *Id.* (citing *Athlone,* 746 F.2d at 983–84). Because there is no prior proceeding between the Nevilles and the Trustee, in which one party pressed a cause of action against another, claim preclusion is inapplicable on these facts.