PER CURIAM:
 

 In this bankruptcy case, debtor Rodney Miller (“Miller”) appeals the district court’s grant of summary judgment in favor of creditor Shallowford Community Hospital, Inc. (“Shallowford”). In granting summary judgment, the district court affirmed a decision of the bankruptcy court which held that Miller’s claim for insurance proceeds under the Georgia no-fault insurance law, although asserted after the commencement of Miller’s bankruptcy ease and subsequent to his discharge in bankruptcy, was property of the debtor’s estate within the meaning of 11 U.S.C.A. § 541(a)(1). Thus, the courts below held such proceeds were available to Miller’s creditors upon Shallow-ford’s petition to reopen the bankruptcy proceeding. We affirm.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 The undisputed facts of this case are as follows. On March 30, 1979, Atlanta Casualty Co. (“Atlanta Casualty”) issued an automobile insurance policy to Miller. Under the Georgia no-fault insurance law, Atlanta Casualty was required to make available on an optional basis up to $50,000 of personal injury protection insurance (“optional PIP”) per insured, including the statutory minimum of $5,000 PIP insurance.
 
 See
 
 Ga.Code Ann. § 56-3404b(a)(1). Atlanta Casualty did not include on Miller’s application for insurance the statutorily required spaces for the insured to indicate his acceptance or rejection of optional PIP benefits as was required by Ga.Code Ann. § 56-3404b(b).
 
 [1]
 

 On September 25, 1979, Miller was involved in a serious car accident. Miller was admitted to Shallowford and was treated there for injuries suffered in the car accident. He incurred a substantial debt to Shallowford. On November 20, 1979, Atlanta Casualty, consistent with the terms of its insurance contract with Miller, paid to Miller and Shallowford $5,000 in standard PIP insurance benefits.
 

 On October 22, 1980, the Georgia Court of Appeals decided
 
 Jones v. State Farm Mutual Automobile Ins. Co.,
 
 156 Ga.App. 230, 274 S.E.2d 623 (1980). In
 
 Jones,
 
 the court held that under Ga.Code Ann. §§ 56-3404b(a)(1) and (b) every application for no-fault insurance was required to contain separate spaces next to each optional coverage which under the law had to be offered.
 
 [2]
 
 Under
 
 Jones,
 
 in order to effective
 
 *1558
 
 ly reject or accept optional coverages, the signature of the insured would have to appear in the separate designated spaces. If the contract was not so signed, the insured was deemed to have a “continuing offer” to accept or reject the optional coverages within 30 days after the notice of an offer for such coverages had been mailed to the insured under Ga.Code Ann. § 56-3404b(c). If after the 30-day period the insured had not responded to the insurer’s notice of offer for optional coverages, such offer was deemed rejected. However, if the insured did not receive proper notice or if he responded within the 30-day period, he was entitled under
 
 Jones
 
 to accept the “continuing offer” simply by tendering the additional premium required for the optional coverage desired.
 
 See Jones,
 
 274 S.E.2d at 626-27.
 

 In the instant case, it is undisputed that Miller’s insurance form did not contain the separate spaces required under § 56-3404b(b). Moreover, there is no allegation that proper notice was sent to Miller under § 56-3404b(c).
 
 [3]
 
 Nevertheless, Miller did not tender an additional premium when the
 
 Jones
 
 case was decided and, therefore, he did not receive optional PIP coverage at that time.
 

 On March 18, 1982, Miller filed his bankruptcy petition under Chapter 7 of the Bankruptcy Code of 1978. On June 25, 1982, Miller received his general discharge in bankruptcy, including discharge of his primary debt to Shallowford. -On July 27, 1982, the bankruptcy court closed Miller’s case.
 
 See
 
 11 U.S.C.A. § 350(a).
 

 On December 1, 1982, the Georgia Court of Appeals overruled its prior decision in
 
 Jones
 
 and held that separate spaces for acceptance or rejection next to each optional coverage were not required by § 56-3404b(b).
 
 Atlanta Casualty Co. v. Flewellen,
 
 164 Ga.App. 885, 300 S.E.2d 166 (1982). However, on March 3, 1983, the Georgia Supreme Court reversed the court of appeals’ decision.
 
 Flewellen v. Atlanta Casualty Co.,
 
 250 Ga. 709, 300 S.E.2d 673 (1983). The supreme court held, as had the court of appeals in
 
 Jones,
 
 that a signature in the appropriate space next to each optional coverage offered was necessary in order to reject such coverage.
 
 Id.
 
 300 S.E.2d at 676. Instead of embracing the
 
 Jones
 
 court’s notion of a “continuing offer,” however, the supreme court held that if optional PIP coverage was not effectively “waived,”
 
 i.e.,
 
 rejected, by the insured the policy would from its inception provide for the maximum coverage of $50,000
 
 *1559
 
 which by statute had to be offered to all insureds.
 
 Id.
 
 Therefore, under
 
 Flewellen,
 
 if optional PIP coverage is not effectively rejected an “insured has the right to demand and receive the benefit of $50,000 coverage upon tender by the insured of such additional premium as may be due and filing of proof of loss by the injured party.”
 
 Id.
 

 On May 23, 1983, Miller’s attorney demanded optional PIP benefits by tendering the additional premium owed and submitting proof of loss to Atlanta Casualty. On June 20, 1983, Atlanta Casualty responded to Miller’s demand by issuing a joint check payable to Miller, Miller’s attorney and Shallowford for approximately $45,000 (the $50,000 maximum PIP coverage less $5,000 in PIP coverage already paid under the policy). Shallowford refused to endorse the check to Miller and on June 27, 1983 it filed an application in the bankruptcy court to reopen Miller’s Chapter 7 proceeding. In addition, Shallowford filed a complaint to revoke the discharge of Miller’s debt to Shallowford, claiming that it was due $19,-095.50. The theory underlying Shallow-ford’s claim was that, at the time Miller filed his Chapter 7 petition, Miller had an asset which was not reflected on his bankruptcy schedules and, therefore, the bankruptcy trustee was unable to secure such asset on behalf of Miller’s creditors. This asset was in the form of a contractual right to or a cause of action for the maximum optional PIP benefits as established in the
 
 Jones
 
 case. Shallowford argued that these additional insurance proceeds could have been recovered and distributed to the creditors if the trustee had been aware of this asset during the pendency of the bankruptcy proceeding.
 

 On June 30, 1983, the bankruptcy court ordered the reopening of Miller’s case. On June 11, 1984, the bankruptcy court ruled that the proceeds of Miller's claim against Atlanta Casualty were property of the bankruptcy estate under 11 U.S.C.A. § 541(a)(1), agreeing with Shallowford that Miller’s right to optional PIP benefits existed at the time the bankruptcy petition was filed. Therefore, the bankruptcy court ordered the trustee to distribute the proceeds of the optional PIP benefits as was necessary to satisfy the claims of Miller’s creditors. On November 6, 1984, the district court affirmed the decision of the bankruptcy court. This appeal ensued.
 

 DISCUSSION
 

 The Bankruptcy Code broadly defines the property of a debtor’s estate to include “all legal or equitable interests of the debtor and property as of the commencement of the case.” 11 U.S.C.A. § 541(a)(1). The legislative history indicates that this definition includes causes of action existing at the time of the commencement of the bankruptcy action.
 
 See
 
 S.Rep. No. 989, 95th Cong., 2d Sess. 82,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5868; H.R.Rep. No. 595, 95th Cong., 1st Sess. 367,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6323. It is clear, then, that the trustee in bankruptcy succeeds to all causes of action held by the debtor at the time the bankruptcy petition is filed, including actions “arising from contract” such as any rights Miller may have had under his contract of insurance with Atlanta Casualty.
 
 See
 
 4
 
 Collier on Bankruptcy
 
 ¶ 541.10[5] (15th ed. 1985). The sole issue in this case, therefore, is whether Miller had a cause of action for optional PIP benefits at a time he commenced his bankruptcy proceeding.
 
 [4]
 

 Miller filed his bankruptcy petition in March of 1982. At that time,
 
 Jones v. State Farm Mutual Auto Ins. Co.
 
 was the authoritative interpretation of § 56-3404b(b) of the Georgia no-fault automobile insurance law. As indicated above, under
 
 Jones,
 
 Miller could have simply tendered an
 
 *1560
 
 additional premium for the maximum optional PIP coverage, and thereby accepted Atlanta Casualty’s “continuing offer” of optional PIP coverage under its contract of insurance with Miller. There is no question in this case that the contract of insurance did not conform to the requirements of § 56-3404b(b), as interpreted by the
 
 Jones
 
 court. Thus, if Atlanta Casualty had refused Miller’s acceptance of its “continuing offer,” Miller could have successfully pursued a cause of action under
 
 Jones.
 
 Although the bankruptcy trustee in this case was not aware of Miller’s Jones-based cause of action because it was not listed on Miller’s schedule of assets, that does not mean the asset should be unavailable to creditors once the asset is discovered.
 
 See 4 Collier on Bankruptcy
 
 ¶ 350.03[2] & cases cited (regarding “reopening of the case to administer newly discovered assets”).
 

 Miller argues that he should not be deemed to have had a Jones-based cause of action at the commencement of the bankruptcy case because in the aftermath of the
 
 Jones
 
 case the law under § 56-3404b(b) was confused and unclear. In this regard, Miller points to the court of appeals’ opinion in
 
 Flewellen
 
 overruling
 
 Jones,
 
 and to an affidavit from a claims attorney of Atlanta Casualty stating that Miller’s
 
 Jones-bused
 
 claim for optional PIP benefits would not have been paid prior to the
 
 Flewellen
 
 decision in the Georgia Supreme Court. In addition, Miller relies on the case of
 
 Cotton States Mutual Ins. Co. v. McFather,
 
 251 Ga. 739, 309 S.E.2d 799 (1983),
 
 cert. denied,
 
 — U.S. —, 104 S.Ct. 2336, 80 L.Ed.2d 811 (1984), in which the Georgia Supreme Court held that insurers would not be subjected to bad faith penalties for not paying
 
 Jones
 
 claims during the period after
 
 Jones
 
 and before
 
 Flewellen
 
 was decided in the Georgia Supreme Court.
 
 Id.
 
 309 S.E.2d at 802-03. The
 
 McFather
 
 court so ruled because of the arguable confusion in the law between the
 
 Jones
 
 decision in the court of appeals and the
 
 Flewellen
 
 decision in the supreme court.
 
 Id.
 
 at 803. Miller claims that it is unfair to subject insureds to a
 
 pre-Flewellen
 
 understanding of
 
 Jones,
 
 while insurers under
 
 McFather
 
 are not required to have such an understanding. Thus, Miller argues that his cause of action for optional PIP coverage accrued when the Georgia Supreme Court decided
 
 Flewellen
 
 and as such is “after acquired” property,
 
 i.e.,
 
 not property of the bankruptcy estate under 11 U.S. C.A. § 541(a)(1) because it was acquired after the commencement of Miller’s bankruptcy proceeding.
 

 Upon analysis, Miller’s argument misses the mark. The question in this case is not whether the law
 
 post-Jones
 
 was arguably confusing to insurers and insureds; but, rather, whether Miller in fact had a cause of action at the time his bankruptcy proceeding commenced. Indeed, if the
 
 Jones
 
 decision had been crystal clear and Miller was aware of his cause of action at the time the bankruptcy proceeding commenced, the asset not only would be considered property of the estate, but he could also be subjected to penalties under the Bankruptcy Code for concealing assets and defrauding creditors.
 
 See
 
 11 U.S.C.A. §§ 727(a), (d)(2);
 
 see also Chalik v. Moorefield,
 
 748 F.2d 616 (11th Cir.1984) (debtor’s concealment of assets, even if worthless, warrants loss of discharge in bankruptcy).
 
 But see infra
 
 note 6. Assuming, however, that the state of the law was somewhat confused after
 
 Jones,
 

 [5]
 

 it is nevertheless clear that Miller had a cause of action for optional PIP coverage when
 
 Jones
 
 was decided. The Georgia Supreme Court in
 
 Flewellen,
 
 after deciding to return to the
 
 Jones'
 
 multiple signature requirement, carefully considered the argument that its ruling should be prospective only.
 
 Flewellen v. Atlanta Casualty Co.,
 
 300 S.E.2d at 676-78. The
 
 Flewellen
 
 court rejected this argument and held that
 
 Flewellen/Jones
 
 claims would be retroactive to the effective date of the Georgia no-fault law.
 
 Id.
 
 at
 
 *1561
 
 678 (“The law had been in effect since 1975, Ga.L.1974, p. 113, and the insurer proceeded at its own risk in failing to comply with the statute when issuing this policy in 1979”). This represents a definitive statement by the Georgia court that claims such as Miller’s came into existence before
 
 Jones
 
 was decided, and
 
 not
 
 when
 
 Flewel-len
 
 was decided in the Georgia Supreme Court. Indeed, this is the implicit meaning of
 
 McFather.
 
 Although
 
 McFather
 
 held that insurers would not be subject to bad faith penalties for nonpayment of benefits between the
 
 Jones
 
 and
 
 Flewellen
 
 decisions, such a decision is necessarily premised on an understanding that the insured had at the least a cause of action in that interim period.
 
 [6]
 

 We hold that Miller’s /cwes-based claim to optional PIP coverage existed at the time Miller filed his Chapter 7 petition and, thus, such claim was property of his bankruptcy estate under 11 U.S.C.A. § 541(a)(1). Accordingly, the district court’s grant of summary judgment in favor of Shallowford is
 

 AFFIRMED.
 

 [1]
 

 . In the text we have cited the relevant provisions of the Georgia no-fault statute in effect at the time Miller’s insurance policy was issued. Since then, the Georgia Code has been recodi-fied and the relevant provisions of the Georgia no-fault statute now appear in Ga.Code Ann. § 33-34-5. Subsequent to the recodification, § 33-34-5(b), the primary provision of the Georgia no-fault statute of concern in the instant case, was amended in 1983.
 
 See
 
 Ga.Code Ann. § 33-34-5(b) (Michie Supp.1984). We need not address the significance of this amendment since the amendment explicitly limits its applicability to applications for motor vehicle insurance sold in Georgia after November 1, 1982, and, thus, can have no retroactive effect with respect to Miller's policy issued in March of 1979.
 
 Id.
 

 [2]
 

 . Ga.Code Ann. § 56-3404b, in effect at the time of the issuance of Miller’s insurance policy, read in relevant part:
 

 Optional Coverages.
 

 (a) Each insurer shall also make available on an optional basis the following coverage:
 

 (1) An aggregate limit of benefits payable without regard to fault up to $50,000.00 per person, which may be rejected to reduce to not less than an aggregate limit of benefits payable without regard to fault of $5,000.00 per person by written consent of the policy holder....
 

 
 *1558
 
 (b) Each application for a policy of motor vehicle liability insurance sold in this state must contain separate spaces for the insured to indicate his acceptance or rejection of each of the optional coverages listed in subsection (a) of this Code section and no such policy shall be issued in this state unless these spaces are completed and signed by the prospective insured.
 

 [3]
 

 . Ga.Code Ann. § 56-3404b(c), which has since been repealed,
 
 see
 
 Ga.Code Ann. § 33-34-5 (Michie Supp.1984), read as follows:
 

 On and after March 1, 1975, all named insureds in existing motor vehicle liability policies who have not previously responded to an offer to accept or reject the optional coverages required to be offered by this chapter shall be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this Code section; provided, however, that the failure of an insured to notify his insurer of his written acceptance or rejection within 30 days after written notice of the offer has been mailed by the insurer, postage prepaid, by first class mail to the address stated in the policy shall constitute a rejection of the optional coverage.
 

 The notice provision quoted above was primarily designed to provide a mechanism whereby insurers could offer to their insureds who had policies in existence prior to the effective date of the Georgia no-fault law the statutorily required opportunity to contract for the optional insurance benefits. The Georgia Supreme Court has held that the notice under § 56-3404b(c) had to contain written information clearly stating the optional coverages and a means for the insured to make a written acceptance or rejection of each coverage. However, the insured need not have provided a signature indicating acceptance or rejection of each optional coverage, as the
 
 Jones
 
 case required with respect to initial applications for optional insurance coverages under § 56-3404b(b).
 
 See generally Wiard v. Phoenix Ins. Co.,
 
 251 Ga. 698, 310 S.E.2d 221 (1983). In any event, there is'no allegation in this case that Miller was sent notice of any kind pursuant to Ga.Code Ann. § 56-3404b(c).
 

 [4]
 

 . There is no question, nor do the parties dispute, that the bankruptcy court had the power to reopen Miller's case to administer previously unadministered assets.
 
 See
 
 11 U.S.C.A. § 350(b); 4
 
 Collier on Bankruptcy
 
 ¶ 350.03 (15th ed. 1985). It is also clear that a creditor such as Shallowford was permitted to move to reopen the case as a party "who would be benefited by the reopening.”
 
 Id.
 
 at ¶ 350.03[2].
 

 [5]
 

 . It is interesting to note in this regard that Miller's lawyer, when tendering Miller’s additional premium and demanding the maximum optional PIP benefits, cited
 
 Jones,
 
 not
 
 Flewellen,
 
 in support of his demand.
 

 [6]
 

 . As the district court noted, the
 
 McFather
 
 case can easily be squared with the instant case:
 

 McFather
 
 would also support the view that a debtor who failed to schedule a
 
 Jones-b&sed
 
 claim for bankruptcy purposes prior to
 
 Flew-ellen
 
 would not be found to have acted in bad faith. The
 
 McFather
 
 decision then deals with the issue of penalties for failure to fully understand
 
 Jones
 
 while the ruling of the bankruptcy court [in this case] goes to a very different issue, namely whether a /orces-based claim could have been stated by appellant in March 1982.
 

 District Court Order, Record, vol. 2 at 90. We need not decide, of course, whether, on a
 
 McFa-ther
 
 rationale, a debtor-insured would be immune from fraud penalties in a bankruptcy proceeding for failure to schedule a
 
 Jones
 
 claim prior to the Georgia Supreme Court's decision in
 
 Flewellen.
 
 Nevertheless, the above-quoted portion of the district court order is illuminating because it makes clear how the issue addressed in
 
 McFather
 
 differs from the issue in the instant case.