**In re Claudette HASKETT, Debtor.**

No. 01–40356–JSS–7.

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

July 31, 2003.

Julian Stephens III, Anniston, AL, for Claudette Haskett.

Harry P. Long, Anniston, AL, for trustee.

## MEMORANDUM OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

The above-captioned title 11 case came before this Court on May 13, 2003, on a Motion to Reopen Case filed jointly by the Debtor and the Chapter 7 Trustee, James G. Henderson. (Doc. No. 13). The Debtor, Debtor's counsel, and counsel for the Trustee appeared before this Court. After presentation of evidence and argument by the parties, this Court took the matter under advisement. This Memorandum Opinion constitutes this Court's findings of fact and conclusions of law.

## JURISDICTION

This Court has original and exclusive jurisdiction to hear and determine all cases under title 11 pursuant to 28 U.S.C. §§ 157(a), 1334(a), 1334(e), and the Standing Order of Reference in the Northern District of Alabama. (Ord.Ref.N.D.Ala. July 17, 1984). This motion seeks an order of this Court and said reference has not been withdrawn. The motion pending before this Court is a core proceeding; venue is proper and has not been challenged.

## FACTUAL BACKGROUND

Debtor Claudette Haskett is one in a class of plaintiffs in a large civil action, pending for several years and styled *Abernathy v. Monsanto*, alleging PCB poisoning and property damage against Monsanto and other defendants ("the *Monsanto* case").

Debtor first filed for chapter 13 in this District in May 1999. At the time of her first filing, Debtor did not schedule her involvement in the *Monsanto* case as a potential asset or potential cause of action. Debtor testified that, at that time, the civil case was just beginning and Debtor, a mental health patient, did not understand the situation. This chapter 13 case was dismissed when Debtor, whose main creditor was her mortgagee, was unable to fund a plan.

Debtor filed a second petition for chapter 13 on June 27, 2000; however, she again did not schedule her involvement in the *Monsanto* case. At some point after filing her petition but prior to confirmation, the Debtor realized that her cause of action against Monsanto was not listed in her schedules. On October 24, 2000, Debt-

or amended her schedules and plan to disclose the potential cause of action. As Debtor was again unable to fund her plan and confirmation was denied, this second chapter 13 case was dismissed.

Just over a month later, having determined that she would have to surrender her real estate due to inability to pay, Debtor sought advice from the counsel who had represented her in the two previous filings to aid her in filing chapter 7. Using her most-recent previous chapter 13 petition as a guide, the attorney prepared the chapter 7 petition, which Debtor signed as verification. According to verified statements submitted in conjunction with the current motion to reopen by Debtor and her attorney, the amendment regarding the *Monsanto* case in the previous chapter 13 was inadvertently not referenced. Debtor subsequently received a discharge in chapter 7 on January 30, 2001; her case was administratively closed on June 15, 2001.

■ On April 3, 2003, Debtor and Trustee filed this joint Motion to Reopen. As neither the Bankruptcy Code nor the Rules of Procedure require a hearing on a motion to reopen, absent request by a party in interest, the decision of whether to hold a hearing is within the sound discretion of the court. *See* 11 U.S.C. § 350(b), Fed. R. Bankr.P. 5010 & 9013, and *In re Jones*, 261 B.R. 479 (Bankr. N.D.Ala.2001). After reviewing the motion and file, this Court set a hearing.

Debtor testified at hearing that she never intended to not disclose this potential cause of action or asset and that she was not aware, until just prior to filing the current motion, that the action was not listed in her schedules. In March 2003, Debtor's attorney in the civil action, Donald Stewart, recommended that Debtor ensure that her involvement in the *Monsanto* case had been disclosed in her bankruptcy case. Debtor testified that her desire now to reopen was not prompted by any action by defendants in the state court proceeding but, rather, is in response to her recent discovery that the *Monsanto* case was inadvertently excluded from her petition. Debtor and Trustee's joint Motion to Reopen was served on all defendants in the state court action and no objections were filed.

## DISCUSSION

■ The Bankruptcy Code provides courts discretion to reopen cases in order to administer assets, to afford relief to the debtor, or for other cause. 11 U.S.C. § 350(b). "A decision to reopen a case for those purposes is within the discretion of the bankruptcy judge and will not be set aside absent a showing of abuse of discretion." *Matter of James*, 184 B.R. 147, 149 (Bankr.N.D.Ala.1995).

Typically when a court is faced with a motion to reopen a case, particularly one in which the trustee has joined, the discretionary determination of "cause" as set forth by 11 U.S.C. § 350(b) is not a daunting task. Though, indeed, not as existential in nature as that which it parodies, "To reopen or not to reopen, that is the question," nonetheless warrants thoughtful consideration. Recent Eleventh Circuit cases involving debtors' nondisclosures and the rather new application of an old doctrine, judicial estoppel, seem to make courts dubious of even the most innocent debtors. Judicial estoppel is being applied in nonbankruptcy forums in a majority of states to bar would-be plaintiffs who failed to schedule the causes of action in prior bankruptcy cases. Honorable William Houston Brown, Lundy Carpenter, & Donna T. Snow, DEBTORS' COUNSEL BEWARE: USE OF THE DOCTRINE OF JUDICIAL ESTOPPEL IN NONBANKRUPTCY FORUMS, 75 Am. Bankr. L.J. 197, 228 (2001) (*citing, e.g., Jinright v.*

*Paulk,* 758 So.2d 553 (Ala.2000); and *cf. Jones v. Lanthrip,* 765 So.2d 682 (Ala.Civ. App.2000)). However, the rising tide of judicial estoppel has been reigned in by courts at all stages contemplating a defendant's assertion of the defense. *See, e.g., Donato v. Metropolitan Life Ins. Co.,* 230 B.R. 418 (N.D.Cal.1999) (denying defendant-employer's motion for judgment on the pleadings based on judicial estoppel in discrimination claim filed by former employee-debtor because debtor's failure to list the cause of action was merely inadvertent); *In re Trans World Airlines, Inc.,* 261 B.R. 103 (Bankr.D.Del.2001) (allowing debtor to reject contract despite contrary conduct prior to bankruptcy because judicial estoppel "does not intend to eliminate all inconsistencies, however slight or inadvertent. (citations omitted). Rather, the doctrine is 'designed to prevent litigants from playing "fast and loose" with the courts.' (citations omitted)."). Nonetheless, like it or not, courts faced with motions to reopen to schedule previously undisclosed assets, particularly potential causes of action, must confront two diametric consequences. If a court reopens such a case, then the debtor is generally free to amend his schedules to include the previously undisclosed cause of action; this single decision by the court then appears to preclude the debtor's adversary from asserting judicial estoppel as a defense. On the other hand, if a court denies the motion to reopen, then the debtor is not allowed to amend; this decision leaves the debtor vulnerable to an almost certain demise at the hands of judicial estoppel. The problem with a court's consideration of these competing consequences on a "simple" motion to reopen is two-fold: first, the role of the bankruptcy court is to determine the effects on the estate, the debtor, and the creditors, not the defendants in the previously undisclosed cause of action; and second, had the debtor dili-

gently adhered to his duty to disclose, the court would not be faced with such a quandry.

### Debtor's General Right to Amend

Bankruptcy Procedure generally permits the voluntary debtor to amend his schedules at any point prior to close of his case. Fed. R. Bankr.P. 1009. The fairly clear, long-standing rule in this Circuit has been that courts generally have no discretion to deny a debtor his right to amend, unless evidence is shown of a debtor's bad faith or of prejudicial effect on creditors. *In re Doan,* 672 F.2d 831, 833 (11th Cir. 1982) (*citing In re Gershenbaum,* 598 F.2d 779, 781–82 (3d Cir.1979)). In *Doan,* the Court insinuated its foresight of such a rule's future criticism by commenting that though debtors' failure to schedule their potential tax refund as an asset was not necessarily model behavior, there was no evidence that the failure was intentional, and, without such evidence, debtors' preclose motion to amend was due to be granted. 672 F.2d at 834.

It has also long been understood that a closed bankruptcy estate may be reopened at the discretion of the court to fully administer previously unadministered assets, regardless of the length of time for which it has been closed, provided no unreasonable delay. *See Traub v. Marshall Field & Co.,* 182 F. 622 (5th Cir.1910). Until the recent rulings in *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282 (11th Cir.2002), and *De Leon v. Comcar Indus., Inc.,* 321 F.3d 1289 (11th Cir.2003), the traditions of discretionary reopening and freedom to amend had been readily combined to reopen cases to allow debtors to remedy previously undisclosed assets. Having *Doan* as a backdrop, Judge Watson sitting on this Court weighed the scales in favor of the innocent debtor whose case had already closed in *In re Minniefield,* 42 B.R. 508 (Bankr.N.D.Ala.1984). The debt-

or, whose debts were primarily health-related, received a no asset chapter 7 discharge. Almost a year after debtor's case was closed, the hospital's anesthesia department brought a collection action against debtor for a prepetition debt. Having initially scheduled only two hospital debts to different departments, debtor moved to reopen her bankruptcy case to include the anesthesia debt and submitted an affidavit claiming to have been unaware of this third debt at the time of her petition. Relying on 11 U.S.C. § 350(b) and Fed. R. Bankr.P. 5010 allowing reopening of a case to afford relief to a debtor, the Court applied the "exceptional circumstances test" to decide whether to use its discretion to grant debtor's motion. Reopening, thereby allowing the creditor to be added, the Court determined that the debtor had committed no fraud in her omission, rather her failure to schedule was due either to mistake or inadvertence. *Id.* at 509. *See also, In re Griner,* 240 B.R. 432 (Bankr.S.D.Ala.1999) (finding that a debtor who failed to list a potential cause of action in his bankruptcy schedules was not judicially estopped from thereafter pursuing that cause of action because the failure to disclose was not a deliberate omission).

### Interest of Creditors

Before *Burnes* and *De Leon,* even the Circuit agreed that reopening to schedule a previously undisclosed asset may be justified if in the best interests of the estate and creditors and regardless of the reasons for nondisclosure. *See In re Miller,* 767 F.2d 1556 (11th Cir.1985). Debtor Miller was involved in a prepetition car accident, injuries from which required extensive medical treatment. After debtor's insurance company paid to the debtor and hospital the statutory minimum of $5,000 personal injury protection (PIP) insurance, debtor filed bankruptcy and received a discharge of his debts, including the re-

maining balance owed to hospital. About ten months after his case was closed, debtor's attorney tendered an additional premium for optional PIP insurance up to $50,000. The insurance company issued a check made payable jointly to debtor and hospital, but hospital refused to endorse. Instead, hospital moved to reopen debtor's chapter 7 case and filed a complaint to revoke discharge. Debtor appealed, ultimately to the Circuit, arguing that unclear Georgia law regarding optional PIP benefits made it impossible to determine whether debtor's right to the optional PIP existed at the date of petition, and thereby the optional PIP could not be property of the estate. Ultimately determining that the right did exist at the time of filing, the Circuit affirmed reopening the case, making the additional PIP available to creditors. Sorting through inconsistencies in Georgia insurance law as proffered justification for the debtor's failure to disclose, the Court narrowly focused its attention on the bankruptcy estate: "Although the bankruptcy trustee in this case was not aware of [debtor's right] because it was not listed on [debtor's] schedule of assets, that does not mean the asset should be unavailable to creditors once the asset is discovered." *Id.* at 1560. The idea of focusing on the estate caught on, as bankruptcy courts in *Miller's* originating state thereafter fairly explicitly held that, when considering reopening a case to administer previously undisclosed assets, potential benefit to creditors should be elevated above a debtor's good faith or lack thereof. *See, e.g., In re Strickland,* 285 B.R. 537 (Bankr.S.D.Ga.2001) (reopening no asset chapter 7 for debtor to list previously unscheduled cause of action thereby precluding judicial estoppel defense by state court defendants); *In re Dewberry,* 266 B.R. 916 (Bankr.S.D.Ga.2001) (also reopening no asset chapter 7 to administer previously un-

disclosed asset because debtor's creditors should not be "punished," regardless of any lack of good faith by debtor); *In re Lewis,* 273 B.R. 739 (Bankr.N.D.Ga.2001) (same). *Compare, e.g., In re Carter,* 258 B.R. 526 (Bankr.S.D.Ga.2001) (denying chapter 13 debtors' motion to reopen case to schedule previously undisclosed cause of action because, as debtors' was a full-pay plan, creditors could not receive any further benefit).

### Burnes' Judicial Estoppel

*Burnes v. Pemco Aeroplex, Inc.* established the new rule for applying judicial estoppel to bar plaintiffs who fail to disclose causes of action in past or concurrent bankruptcies. *Burnes* was a class action employment discrimination lawsuit suit brought by 35 individuals, one of which was Chapter 13 debtor Billups, against employer Pemco Aeroplex. Billups, who filed for chapter 13 in mid–1997, filed charges with the EEOC and joined the class of plaintiffs while still in chapter 13, though he never amended his petition to reflect the cause of action. While the class action was pending, Billups converted his bankruptcy case to a chapter 7, yet again, he never disclosed the employment discrimination claim in his petition and schedules. Shortly after Billups' chapter 7 discharge, Pemco moved for summary judgment on Billups' claims in the class action, asserting that judicial estoppel, i.e., Billups' failure to disclose the claims in bankruptcy, barred him from prosecuting those claims. On appeal from the grant of summary judgment, the Circuit rationalized the purpose underlying judicial estoppel application, explaining that the goal is to protect the integrity of the courts, preventing parties from playing "fast and loose" with, or making a mockery of, the judicial system. Discussing typical considerations regarding clearly inconsistent positions and unfair advantages, the Court contrasted the doctrine's application to monetary versus injunctive claims and rested on a seemingly case-by-case, total circumstances approach.

Regarding the monetary claims, in *Burnes,* and perhaps more typically than any one court has pointed out, the circumstances approach centered on the issue of intent: whether Billups intentionally did not disclose his cause of action in order to gain an unfair advantage. The *Burnes* Court distinguished between the manipulative debtor who, only after being caught like a tiger by the tail, attempts to correct his nondisclosure and the truly good faith debtor who despite his best laid plans inadvertently failed to disclose. Though commonsensical, this line of distinction seemed to blur somewhat in its application. Comparing the First and Fifth Circuits' approaches to inferring intentional manipulation from the record, the *Burnes* Court rationalized inference of intentionally failing to disclose when the record did not establish inadvertence, which exists "only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." 291 F.3d at 1287 (quoting *In re Coastal Plains, Inc.,* 179 F.3d 197, 210 (5th Cir.1999)). Thus, whereas tradition seemed to inure an innocent-until-proven-guilty approach by allowing reopen and amendment unless proof of bad faith, *Burnes* seemed to rather nonchalantly turn the rule topsy-turvy.

Furthering cynicism, *Burnes* affirmed the district court's use of judicial estoppel to bar Billups' claims against Pemco, finding that the record sufficiently supported an inference of intentional manipulation. The undisputed facts in the case established that Billups had knowledge of his claims during the pendency of his bankruptcy, as he initiated charges while in chapter 13, and nonetheless never amended his schedules to reflect the claims, even

at the time of conversion to chapter 7. Further, the Court defined motive as "gain[ing] an advantage by concealing the claims from the bankruptcy court." *Burnes*, 291 F.3d at 1288. Billups did not dispute that the outcome of his bankruptcy, i.e., complete discharge in a no-asset chapter 7, would have been different had he properly disclosed his claims; indeed, Billups himself argued on appeal that he should be allowed to reopen his bankruptcy case to schedule the claims against Pemco. The Circuit declined, however, stating:

> Allowing Billups to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.

*Burnes*, 291 F.3d at 1288.

Reviewing *Burnes'* distinctions between monetary and nonmonetary relief offers some clarity, however, thereby repudiating the initial cynicism. The Court further defined motive, referring again to likely effect on the outcome of the bankruptcy case, in its discussion regarding Billups' claim for injunctive relief. On the same rationale as was used by its bankruptcy court predecessors facing full-pay plans, the Court determined that "the important and necessary reasons that bar Billups' monetary claims do not affect" his pursuit of injunctive relief because pursuing the injunctive relief would offer no monetary value to the bankruptcy estate. *Burnes*, 291 F.3d at 1289. Again, the Court attempted to narrow its rationale, stating in a footnote that the facts of the particular case should guide the court in determining whether to apply judicial estoppel to other undisclosed claims for non-monetary relief. *Id.* at 1289 n. 3.

### The Race

Seemingly *Burnes'* case-by-case approach shapes up into a test hinging on a race to the courthouse: whether the debtor (1) had knowledge of the claim,(2) had motive to conceal it, and (3) attempted to remedy the nondisclosure only after being caught. If the debtor had knowledge of the claim, did he also have a motive to conceal it; did he gain an advantage and/or change the outcome of the case? Heeding the small-print advice in *Burnes'* footnote, answering this question is not as simple as determining whether the undisclosed asset has monetary value for the estate. The undisclosed asset could be personal property which could have been completely exempted, or the debtor's plan could provide for 100% repayment to unsecured creditors. Nonetheless, if debtor did gain an advantage, he has only one possible reprieve—the saving grace of the ever-elusive yet quite determinative good faith factor. That is, did the debtor attempt to remedy his nondisclosure on his on accord, or did he, at first wind of possible bar attempt by his adversary, turn tail and run to amend? The approach molds a concave relationship between motive and good faith. If the debtor had no motive for nondisclosure, then judicial estoppel will not bar his claims so long as he at some point amends. If the debtor had a motive for nondisclosure, then the race begins.

*De Leon v. Comcar Industries, Inc.*, extending *Burnes'* rule to chapter 13 cases as well, used the debtor's proposed payment plan to evaluate whether the debtor had a motive for his disclosure. There, the debtor-plaintiff appealed grant of summary judgment in favor of his former employer on his discrimination and retaliation

claims. The district court had granted summary judgment on the basis that judicial estoppel barred debtor's claims because he failed to disclose them in a contemporaneous bankruptcy case. Debtor had filed bankruptcy after filing a charge with the Equal Employment Opportunity Commission (EEOC) but before receiving the customary right to sue letter and filing suit. Thus, he filed suit while in bankruptcy but never amended his schedules to reflect the discriminations claims. Applying *Burnes'* knowledge and motive concept, the *De Leon* Court also inferred from the record the debtor's lack of good faith because he had a motive to conceal the claim, i.e., his amount of repayment in chapter 13 would be less without calculating potential proceeds from a discrimination suit, and he did not attempt to amend to add the claims until after his former employer moved for dismissal of the discrimination suit based on judicial estoppel.

### No Harm, No Foul

Do not despair about which is quicker, the turtle or the hare. For at the heart of this race, and despite *Burnes'* strong words regarding truthful disclosure and judicial integrity, is but the same rose yet by another name. *Burnes'* "motive to conceal" is none other than "interest of creditors" harmed by a dash of bad faith. The true hook is whether a debtor's failure to disclose had any effect on the outcome of the case. *Burnes* blatantly reversed prior sentiment that a debtor's good faith or lack thereof was irrelevant while subtlety relying on the same long-standing rule— what difference, if any, did debtor's nondisclosure make to the administration of the estate and his creditors? In essence, it's a no harm, no foul approach.

### CONCLUSION

■ Ultimately, the point is that the strength or weakness of a nonbankruptcy forum defendant's case should not weigh in on the bankruptcy court's decision on a motion to reopen. Also, the bankruptcy court should not elevate the effect reopening may have on one party over the estate-wide effect of a new asset to be administered. The brass tacks are that the parties will have an opportunity to object to a debtor's amending his schedules, statements, and exemptions upon reopening. Rather, the bankruptcy court must evaluate the circumstances surrounding the nondisclosure, determine whether it had any effect upon the administration of the estate, and whether debtor, in good faith, attempted to remedy his failed duty.

■ Here, Debtor admitted to having knowledge of her claims in the *Monsanto* case to some degree even at the time of her first bankruptcy filing. Though she testified that she really did not understand all of what was happening in the case early on, she did not deny knowledge. Finding that Debtor did have a motive to conceal her claims does not require much of a stretch either. Absent disclosure of her involvement in the *Monsanto* case, Debtor received a no-asset chapter 7 discharge. However, despite her knowledge and inferred motive, Debtor offered a rather reasonable, though not necessarily excusable, explanation for her failure to disclose. She testified as to how the nondisclosure inadvertently occurred and how she discovered such inadvertence upon advice of counsel in the state court proceeding, not at the threat of judicial estoppel by defendants in the *Monsanto* case. Though her failure to schedule the asset did certainly have an effect on the administration of the estate, the real harm would be in not allowing her creditors to benefit now. Therefore, after much consideration, the Court answers, "To reopen." An order

consistent with this opinion will be entered accordingly.